1843.

Merritt
v.
Lambert.

MERRITT *vs.* LAMBERT.

Where in a suit for the specific performance of a contract for the exchange of lots, a receiver of the rents and profits of the premises in controversy had been appointed, and pending the suit the defendant sold his interest in one of his lots to a stranger, and such purchaser employed the defendant's solicitor to conduct the defence for him, and agreed to give such solicitor all the rents and profits of the premises pending the litigation, in addition to the taxable costs of the defendant, who still retained a part of the premises in controversy, as an extra conpensation for his services ; *Held*, that such rents and profits constituted a part of the subject matter of the litigation, and that the agreement to give the same to the solicitor for his professional services was void ; and that the solicitor was only entitled to his taxable costs as between solicitor and client.

Attorneys and solicitors are public officers, and are under the control of the courts in which they practice, in regard to their behavior to their clients, and to the contracts which they make with them. And when they accept retainers from their clients they are bound to serve them for the stated fees allowed by law for their services. But where the attorney or solicitor is also a counsellor of the court, and agrees with his client to perform the duties of counsel for him, upon the hearing or trial of the cause, or upon the argument of special motions, he may stipulate with his client to receive a reasonable reward for the services performed by him as such counsel.

But neither an attorney or a solicitor or a counsellor of the court will be allowed to contract with his client, previous to the termination of the suit, for a part of the demand, or subject matter of the litigation, as a compensation for his services.

Where the client makes a summary application to the court, against his attorney or solicitor, instead of instituting a suit against him, to compel such attorney or solicitor to do him justice, the latter is entitled to the benefit of using his own affidavit in resisting such application.

October 17.    THIS cause came before the chancellor upon an appeal by J. Wallis, one of the solicitors and counsellors of this court, from an order of the vice chancellor of the first circuit, made upon the application of Alphonse Loubat, who was a purchaser pendente lite of part of the property which was in litigation in this cause. The appellant was employed originally by the defendant, John Lambert, to defend this suit ; which was brought against him by the complainants for the specific performance of a contract to exchange two several lots of land with them, for certain other

property in Buffalo the title to which eventually failed.

And the bill in this cause was thereupon dismissed without costs to either party ; and the decree of dismissal was affirmed on appeal to the chancellor, with costs to the defendant, to be paid by the appellants on the appeal.

During the pendency of the suit the complainants obtained the appointment of a receiver of the rents and profits of both lots ; which rents and profits came into the hands of Wallis, as the solicitor, under the final decree. And the net amount of the rents and profits of the lot of Loubat which thus came into the hands of the solicitor was about $1500. After the order for the appointment of the receiver was made, Wallis wrote to Loubat, informing him that the vice chancellor had made such an order, and that it had been affirmed upon appeal to the chancellor ; that as the complainants had filed a notice of the pendency of the suit, at the time it was commenced, the rent of the house subsequently sold to him by the defendant would be taken out of Loubat's hands at once, unless the order appointing the receiver should be immediately stayed ; that the lot retained by Lambert being mortgaged to nearly the amount of its value, he felt but little interest in the matter, but was willing to join Loubat in such further proceedings as might be necessary ; and that it would rest with Loubat to determine whether any thing further was to be done in the business. After the receipt of this letter, A. B. Anderson, a lawyer who had examined the title for Loubat on his purchase and informed him that it was good, called upon Wallis, as the agent of Loubat, and employed him to defend his title to the lot in the litigation. And the terms upon which Wallis undertook to act as solicitor for Loubat, as well as for the defendant on record in the suit, formed the subject of controversy between the appellant and respondent. The former swore, in substance, that Anderson, as the agent of Loubat, agreed to give him all the rents and profits of the lot, pending the litigation, for his share of the expenses of the defence ; in addition to what the solicitor should receive from Lambert, the defendant, and

what might be recovered from the complainants if Lambert should succeed in the defence of the suit. And in this respect Wallis was, to some considerable extent, sustained by the affidavits of his sons and others who heard conversations on the subject between him and Anderson. On the contrary, Anderson swore positively that Wallis agreed with him to carry on the defence of the suit for Loubat, for the sum of $200 ; after he had communicated Wallis' proposal to that effect to Loubat and obtained his consent to have the agreement concluded on those terms. And Loubat swore that Anderson informed him, at the time, that he had concluded the agreement on those terms. The vice chancellor directed a reference to a master to ascertain and report the amount of the rents and profits of Loubat's lot which had been received from the receiver by Wallis as the solicitor in this suit ; and also to ascertain and report what reasonable counsel fees should be allowed to Wallis for his services as counsel in this cause from its commencement, in addition to his costs to be taxed as between solicitor and client ; and that upon the confirmation of the master's report Wallis should pay over to Loubat the balance, if any, of such rents remaining in his hands, after deducting therefrom such taxable costs and such reasonable counsel fees as should have been allowed him by the report of the master.

*A. L. McDonald,* for the appellant. The agreement between Lambert and Loubat as made by their respective solicitors was not void for champerty or maintenance. The question of maintenance depends on the validity of the sale by Lambert to Loubat, pendente lite. Before the adoption of the revised statutes such a sale would have been deemed void. (8 *John. Rep.* 479.) But the revised statutes (2 *R. S.* 692, § 5,) authorized the sale by Lambert, he being in possession. A man in possession of land, may now sell and convey it pending a suit concerning it. (21 *Wend.* 98.) As the conveyance to Loubat was a lawful conveyance and transferred the title to him, he acquired an interest in the

subject matter of the suit, and might therefore lawfully
maintain it. (*Thalimer* v. *Brinckerhoof*, 3 *Cowen*, 623.)
And might maintain it by an agreement to apply for that
purpose the rents of the premises. Lambert should have
been made a party to the petition ; he has an interest in
the agreement.

*M. R. Zabriskie*, for the respondent. The agreement
was void, as by it the solicitor was to receive for his pro-
fessional services a part of the subject matter of the litiga-
tion. This is champerty, an offence at common law. It
was made a penal offence by the statutes of this state pre-
vious to the revision of 1830. (1 *R. L. of* 1813, *p.* 172.)
Although the revisors have omitted the section of the stat-
ute making it a penal offence, the offence still exists at
common law. An agreement that amounts to champerty
cannot be maintained either in law or equity. (5 *John.
Ch. R.* 44.) The agreement was also an agreement on the
part of the solicitor to take an improper fee or reward for
his services. And the court by its supervisory power over
its officers and suitors will not enforce it. No attorney
can be permitted to buy in things in a course of litigation,
of which litigation he has the management. (*Hall* v. *Hal-
lett*, 1 *Cox's Ch. Cas.* 139, *per Ld. Hardwicke. Miles* v.
*Eswin*, 1 *McCord's Ch. Ca.* 524. *Key* v. *Vattier*, 1 *Ham-
mond's R.* 132. *Thurston* v. *Percival*, 1 *Pick. R.* 415.
*Rust* v. *Larue*, 4 *Little. R.* 411.)

THE CHANCELLOR. The weight of evidence in this case,
as to the terms of the agreement concluded between the
appellant and Anderson, taking the affidavit of the appel-
lant into consideration, unquestionably is that Anderson
agreed that Wallis should have all the rents and profits of
Loubat's lot pending the suit, for attending to the defence
for his benefit. And as the respondent has thought proper
to make a summary application to this court to exercise its
jurisdiction over its officer, to compel him to do justice to
his client, instead of bringing a suit at law for money had

and received to his use, the solicitor is entitled to the bene-
fit of his own affidavit in resisting this application. And
had Anderson been authorized by Loubat to make such an
agreement as is detailed in the affidavit of Wallis, and if
that agreement was such an one as this court could uphold,
when made between one of its solicitors and his client
whose rights were in litigation here, the vice chancellor
should have dismissed the petition, upon the affidavits
which were before him. I think the agreement, however,
is such an one as this court cannot permit one of its solici-
tors to make with his client ; and that the vice chancellor
was right in supposing that the appellant was only entitled
to his taxable costs, as between solicitor and client, and
his reasonable counsel fees in the cause, notwithstanding
the alleged agreement. Indeed, I think the order appeal-
ed from is more liberal than it ought to have been, in
charging the respondent with the whole costs and counsel
fees from the commencement of the suit, which was insti-
tuted long before Loubat had any interest in the property.
That part of the costs of the defence was more properly
chargeable upon Lambert, upon whose credit and for whose
sole benefit the services were performed, than upon the
rents and profits of Loubat's lot, which accrued afterwards ;
and which rents and profits Wallis obtained from the re-
ceiver, with full knowledge that they did not belong to
Lambert the defendant.

The principles upon which the court proceeds, in cases
of this kind, are stated with great clearness by Lord Hard-
wick in the case of *Walmesley* v. *Booth*, as reported by
Sergeant Barnardiston. (*Barn. Ch. Rep.* 478.) He there
says, attorneys and solicitors are to be considered as public
officers and ministers of justice. Upon this ground it is
that in courts both of law and equity they have stated fees
allowed them for their services, and are under the govern-
ment of the several courts in regard to their behavior to
their clients. The courts exercise a much larger authority
over them, and interfere much more in contracts which
they make with their clients, than they do in other cases.

For which reason it is that courts, both of law and equity, and especially the courts of law, have certain rules in order to regulate the behavior of these persons, both with regard to their method of proceeding and to the satisfaction which they are to receive from their clients. Attorneys and solicitors, when they have accepted retainers from their clients, are bound to serve them for the stated fees which are allowed by the several courts. And if an attorney extorts more money from his client than the courts allow of, or makes a contract with his client to have more money, the courts will give relief. These principles were acted upon by Lord Hardwick in the subsequent cases of *The Drapers Company* v. *Davis*, (2 *Atk. Rep.* 295,) and *Saunderson* v. *Glass*, (*Idem*, 298.) Sayer also refers to a manuscript case in the king's bench, in Hilary term, 32 George 2d, where an attorney had agreed with his client to be paid for his time at a certain rate by the day, and to be allowed the expenses of a post chaise. And the question was, whether the client should be bound by the agreement. The court decided that he should not ; and referred the attorney's bill for his services to be taxed. (*Sayer's Law of Costs*, 321. *See also Hob. Rep.* 117.) Such continues to be the settled principles upon which all the courts in England proceed, in regard to contracts between attorneys and solicitors and their clients relative to their compensation for professional services previous to the termination of the litigation in which the client is engaged. (*Middleton* v. *Wells*, 1 *Cox's Ch. Cas.* 112. 4 *Bro. P. C. Toml. ed.* 245, *S. C. Newman* v. *Payne*, 4 *Bro. C. C.* 350. *Aubrey* v. *Popkin*, 1 *Dick. Rep.* 403. *Kenny* v. *Brown*, 3 *Ridg. P. C.* 472. *Crossley* v. *Parker*, 1 *Jac. & Walk. Rep.* 440.)

The same principles are recognized by our courts, so far as they are applicable to the situation of the profession in this country. In England, the duties of attorney, or solicitor, and counsel are always performed by different persons ; and of course the attorney or solicitor cannot be permitted to stipulate for any greater compensation for his services

*1843.*

*Merritt*
*v.*
*Lambert.*

than such as are allowed by the practice of the courts, or by the tariff of fees fixed by law. The same rule prevails here, so far as relates to the mere services of an attorney or solicitor. But as most members of the profession practice in the capacity of counsel, as well as in that of solicitor or attorney, if the client agrees with his solicitor or attorney to perform the duty of counsel also, upon the hearing or trial of the cause, or upon the argument of motions or petitions, the latter, in his character of counsel, may stipulate for a reasonable reward for his services as such counsel. And he is not limited to the counsel fees specified in the fee bill, and which are allowed as between party and party. (*Adams* v. *Stevens & Cagger*, 26 *Wend. Rep.* 451.) But he is not permitted, either as attorney or solicitor, or as counsel, to contract with his client, previous to the termination of the suit, for a part of the demand, or subject matter of the litigation, as a compensation for his services. (*Thurston* v. *Percival*, 1 *Pick. Rep.* 415. *Livingston* v. *Cornell*, 2 *Mart. Louis. Rep.* 281. *Key* v. *Vattier*, 1 *Ham. Rep.* 132. *Rust* v. *Larue*, 4 *Littel. Rep.* 411. *Caldwell's adm.* v. *Shepherd's heirs*, 6 *Mon. Rep.* 389. *In Re Beakley*, 5 *Paige's Rep.* 311.) Here the contract which the solicitor says he made with his client, pending the litigation, (for Loubat having purchased pendente lite, with or without actual notice of the suit, must for the purposes of this application be considered a real party to the litigation,) was in effect that he should have all the rents and profits of Loubat's lot, for his professional services, if he succeeded in the defence of the suit. And the right to those rents and profits was a substantial part of the litigation.

Again ; the alleged agreement.was void as being contrary to public policy, as it placed the interest of the solicitor directly in conflict with his paramount duty to his client. For the longer the decision of the suit was delayed, the greater would be his compensation in case he finally succeeded in the defence. His interest, therefore, was to use all the means in his power to prevent the cause from being put in readiness for a hearing and brought to a speedy ter-

mination ; while his duty to his client required that the final decision in the cause should be obtained with the least possible delay. And no court which has a due regard for the rights and interests of its suitors can sanction an agreement which puts the interest and the duty of an attorney or solicitor in opposition to each other.

The order appealed from must be affirmed with costs.