## SUPREME COURT.

### CHARLES O. RICHARDSON agt. THE BROOKLYN CITY AND NEWTOWN RAILROAD COMPANY.

An *attorney at law*, who is a *non-resident of this state*, has no authority or right to, and cannot, practice in the courts of this state.

*Brooklyn Special Term, February,* 1862.

THIS action was brought to recover $387 and interest, money paid to the president of the company under protest and by coercion. The summons and complaint were served on the 4th of January, 1862, and on the 6th a notice of appearance was served on the attorney for the plaintiff, by James S. Sluyter, Esq. On the 8th day of January aforesaid, said Sluyter served a copy of an affidavit of merits, in another suit, in which he informed the attorney for the plaintiff that he resided in Jersey city, in the state of New Jersey. The next day, the attorney for the plaintiff returned said copy affidavit of merits in the first suit and notice of appearance in this suit, with his objection indorsed thereon, to wit : that said Sluyter, being a non-resident, had no right to practice law in this state. On the 10th of January, Sluyter returned the same papers to the plaintiff's attorney, who, on the 13th, served a notice on the company, requiring them to appoint another attorney ; but no attention was paid to it. On the 24th, Sluyter served a copy of an answer, which the attorney for the plaintiff returned to him on the same day, and on the next day (the 25th) entered judgment for $421.32, by default. This was on Saturday. On the 28th, Sluyter served a copy of an affidavit of merits, which the plaintiff's attorney returned the same day, with similar objections indorsed thereon, together with the additional one, that on the 25th judgment had been entered. On the 29th, plaintiff's attor-

ney issued execution, and on the same day Sluyter obtained from Judge Lott, at chambers, an order staying plaintiff's proceedings, and to show cause on the third day of February, 1862, at a special term, why the judgment and execution should not be vacated and set aside, with costs. This order was served on the 30th of January. The motion was argued on the 4th, and decided on or about the 11th of February, 1862.

D. Dudley Field, *for the motion.*
Clark B. Wheeler, *for the plaintiff.*

Emott, Justice. Attorneys are, undoubtedly, in a certain sense, public officers. (*Merritt* agt. *Lambert,* 10 *Paige,* 352, *S. C., in Court of Errors,* 2 *Denio,* 607.) But they are not within the statute, (1 *R. S.,* 122, § 36,) which provides, among other things, that every office shall become vacant by the incumbent ceasing to be an inhabitant of the state. That statute is applicable to offices filled by election or by appointment by the governor, and is intended not only to declare what shall constitute vacancies in such offices, but to provide for filling them. It is manifestly inapplicable to the case of attorneys. Their tenure of office is regulated by article 2 of title 4 of the same chapter and part of the Revised Statutes, (1 *R. S.,* 108, § 29,) subject to removal or suspension by the courts in which they practice; they hold their office during life. An attorney does not, therefore, cease to be an attorney of the court, or forfeit his right to appear and practice therein by removing from the state.

But the court has always required that an attorney should reside within the state. The second rule requires that an applicant for admission to the bar should reside within the district in which he applies. Rule 5 requires the attorney to add his place of residence to his name on all process or papers, and if he neglect to do so, authorizes

Richardson agt. Brooklyn City and Newtown Railroad Company.

service upon him by mail, according to the best informa-
tion which can be obtained as to his residence.   Section
409 of the Code regulates the manner of serving papers.
It provides that service may be made upon an attorney at
his office, by leaving the paper with the person in charge ;
or if there be no person in the office, by leaving it in a con-
spicuous place in the office ; and if the office be not open
to admit of such service, by leaving it at the attorney's
residence with some person of suitable age and discretion.
These various provisions, and especially the latter, would be
rendered nugatory if attorneys who resided out of the state
were permitted to practice.   An attorney might keep his
office closed and empty, and, if he had no residence within
the state, might entirely evade the service of papers, and
baffle his adversary and the court.

Attorneys are liable to attachment, and to punishment
for contempt of the court, for the commission of various
acts of misconduct.   Those remedies may also be evaded,
if they are non-residents.

If an attorney may have a residence out of the state, and
still practice in its courts, he may also dispense with an
office, since there is no more positive requirement that he
should keep an office, than there is that he should have a
residence within the state.   An attorney might thus, as I
have intimated, completely baffle his opponents, and evade
the control of the court ; and, though guilty of malpractice
and misconduct, be a constant fugitive from justice.

This would be an extreme case.   Of course it is not men-
tioned with any reference to the circumstances disclosed on
this motion.   There is nothing here but a technical objec-
tion to the appearance of a very respectable gentleman of
the profession.   Still the case supposed is, perhaps, as
likely to happen now among the multitude of individuals
who, since 1847, have crowded into a profession whose bar-
riers have been thrown down, as it was when it might have
been presumed that an attorney and counsellor of this court

had the acquirements of a lawyer and the principles of a gentleman. Among the numerous incompetent persons whom we are compelled to see in the courts, invested with the character of lawyers under the present constitution, which has made it substantially impossible to keep anybody out, and with the Code of Procedure, which is supposed to render its practice perfectly easy, like the acquisition of languages under certain systems without a master and without study, it would be very unwise to relax any of the protection to suitors and to the administration of justice, which were found necessary in better days.

In the *Chautauque County Bank* agt. *Risley*, (6 *Hill*, 375,) it was expressly held, that after an attorney had left the state, with a fixed intention of residence elsewhere, he could no longer practice in the court, nor could his name be used in the conduct of a suit. The same rule is adhered to in *Deifendorf* agt. *House*, (9 *How. Pr. R.*, 243,) decided in 1854, I do not indeed see how it ever could have been, and especially how it can now be departed from.

The residence of the gentleman who served a notice of appearance for the defendants in this case, is in Jersey city. He speaks of it in his affidavit as a temporary residence, but it is his present residence and his only one. The plaintiff's attorney returned his papers as soon as he ascertained his residence, with a statement of his objections. He was not bound to return them again when they were sent back to him afterwards, for such a proceeding might be indefinitely protracted. The plaintiff's attorney had done enough to indicate his objection to the appearance of an attorney for the defendants who resided out of the state, and the defendants could not have been misled. I attach no importance to the report of the errand boy who served the papers.

The objection in the present case seems technical and sharp, and struck me at first as unfavorably as any one; but it is an objection to which the plaintiff's attorney is

entitled, and which involves the principle upon which the rule stands.

The attorney who served notice of appearance, and an answer for the defendants, has not ceased to be an attorney by removing from the state, but he has ceased to have the right to practice, as long as his non-residence continues; and it makes no difference, nor can we create a distinction between a residence in New Jersey and one in the most remote part of the Union. Either is out of the jurisdiction of the court, and defeats the objects of its rules and practice.

The present motion must be denied, with $10 costs. But as the defendants swear to merits, and are acting in good faith, they may have an order that upon payment of the costs of this motion, and the costs of the judgment, and serving an appearance and answer by a suitable attorney, within ten days, the default may be opened.