MUNDY et al., executors of Mundy,

v.

SCHANTZ et al.

1. In the absence of special agreement, the solicitor who conducts an ordinary undefended foreclosure suit cannot charge his client for services therein beyond the amount of the taxed bill of costs.

2. This court has power by summary proceeding, on motion, to compel a solicitor of the court to pay over to his client money belonging to his client, which he has retained in his capacity of solicitor in a cause in this court, and therein to inquire and ascertain the amount of compensation due the solicitor from the client for services rendered in the same matter.

In foreclosure.

This is a motion, on behalf of the complainants, for an order upon their solicitors herein to pay over to them a portion of the money raised by the sale of the mortgaged premises, which was retained by the solicitors as compensation for their services in this suit. They received their taxed costs in full, but claimed the additional sum retained as a collection fee. The matter was brought before the court by petition of the complainant, answer thereto by the solicitors and evidence taken orally in open court.

The facts are that the complainants found among the assets of their testator the bond and mortgage which is the foundation of the suit, and handed it to the solicitors herein for foreclosure. Nothing was said by either the complainants or the solicitors on that occasion, or at any time, as to compensation.

The land covered by the mortgage is situate in Middlesex county. The complainants lived there and the solicitors had their office at New Brunswick, the county seat thereof.

No defence was made to the bill filed, and the case went to final decree and execution in the ordinary routine way. The solicitors made the ordinary searches of the records of the county, and in the proper courts, to show the state of the title, and to determine the proper persons to be made parties, and were allowed for it in the taxed bill of costs. Extra allowance was also made to the solicitors, under the one hundred and thirteenth section of the Chancery Practice act. It did not appear that they performed any service or did any work not mentioned in and allowed for in the taxed bill of costs, except attending at the sheriff's sale, which took place in New Brunswick, and also receiving from the sheriff the amount ordered to be raised by the decree and execution, and paying over to the complainants the amount due them, less the collection fee here in dispute.

The obligor of the bond secured by the complainants' mortgage, who also held a second mortgage on the premises, was made a party and was brought in by publication, being a non-resident, but it did not appear that the solicitors were subjected to any labor or trouble in finding his residence. There were also judgment creditors of the owners of the equity of redemption, who appeared in the suit by their attorneys of record in the judgments.

*Mr. Charles H. Voorhis*, for the complainants.

*Mr. Woodbridge Strong*, for the solicitors.

PITNEY, V. C.

The learned counsel for the solicitors rested his case mainly upon a general agreement entered into years ago by the members of the bar of Middlesex county, followed by long custom, to charge a collection fee upon transactions of this kind. But the case is bare of the least proof that the complainants had any notice whatever of this custom or practice of the bar of that county, and full notice is, of course, necessary in order to incorporate its terms into the contract.

He also took the ground that the solicitors were entitled to retain out of the moneys so received what their services were

reasonably worth, as upon a *quantum meruit,* and relied upon the Middlesex county custom before referred to, and also upon the general knowledge of the court as to what is a reasonable charge in such a case.

So far as the court has any knowledge upon the subject, it does not support the charge claimed.

But it seems to me that the subject is regulated by statute. The second section of the "Act to regulate fees" (*Rev. p. 399*) provides "that the officers and persons in this act named shall be entitled to demand and receive, for the services hereinafter mentioned, the fees thereto respectively annexed *and no more.*" Then follows a long list of officers, services and fees, in which are included the very services here rendered.

It was argued that this fixing of fees was intended to apply only to the amount which the prevailing party was entitled to recover against the losing party, and not to regulate charges as between solicitor and client. But neither the language of the act just quoted nor that of any other relating to this subject warrants such construction. All that can be said in favor of the proposition is that no costs, except those provided for in the fee-bill, are recoverable by the prevailing party against the losing party. The sections of the Common-law Practice act (at *p. 265 et seq.*), relating to the recovery of costs, all speak of the party "recovering *his* costs" or "paying *his* own costs" &c. Nowhere in that connection is mention made of any particular sum fixed for any particular service as being recoverable against the losing party.

The same is true as to the provisions regulating the practice of this court. Section 105 of the Chancery Practice act provides that, "except where otherwise provided" &c., "it shall be discretionary for this court to award costs or not." And that is the provision which governs the recovery of costs in this court.

I can find no authority for the idea that there is any difference between a taxation of costs between solicitor and client and such taxation for entry in a decree or judgment. The use of the verbiage "between solicitor and client" arises out of the circumstance that costs may be, and frequently are, taxed by the clerk

when there is no recovery for them, and those words are used in such cases. But the taxation is the same whether there be a recovery or not. And the recovery, whether at law or in equity, is of costs to be taxed between solicitor and client.

This point is apparently set at rest by the tenth and twelfth sections of the Common-law Practice act. The tenth section provides:

"If any solicitor or attorney-at-law shall charge in his bill of costs for services not actually done, or for services not allowed by law, or shall take any greater fee or reward for any service by him done than is or shall be allowed by law, he shall pay to the party aggrieved thirty dollars, to be recovered by action of debt, with costs."

And the twelfth section provides:

"No solicitor or attorney shall commence or maintain any suit for the recovery of any fees, charges or disbursements, in equity or at law, against his client or legal representative, until after such solicitor or attorney shall have delivered to such client or his representative, or left for him at his dwelling-house or last place of abode, a copy of the taxed bill of such fees, charges and disbursements."

It is impossible to escape the conclusion that those sections apply to charges by the solicitor against the client for services rendered to him, quite irrespective of the question of their recovery from the other side.

But the fee-bill covers only the particular services therein specified. There is a variety of work which an attorney or solicitor or counsel may do for a client in the course of a suit at law or in equity not included in or provided for in the fee-bill. For all these, subject to the provisions of a statute presently to be referred to, he may and should be entitled to compensation, and, in the absence of a special contract, on a *quantum meruit*. For such he is entitled to sue and recover at law. And I do not wish to be understood as expressing the opinion that the statutes just cited prohibit the making of an express stipulation for compensation for the services mentioned in the fee-bill at a rate greater than those fixed.

The rule which prohibits counsel from recovering, in an action at law, for his services in the absence of a special contract, refers,

Mundy v. Schantz.

as I understand it, only to the services of counsel as such in advocating causes in court, and not to the great variety of other work which may be done by either a solicitor or counsel.

I will mention two classes of work not included in the fee-bill, which may occur in an ordinary undefended foreclosure suit. One is the tracing of the devolution of the title *in pais*, where it does not appear of record—for example, where there has been a death and devolution by descent. Another is the ascertaining the residence of absent defendants. Both of these are services which, strictly speaking, the client should perform and which the solicitor should not perform until his client has declined or failed to do so, or has especially directed him to perform. In practice, this work is usually done by the solicitor without conference with his client, and is attended with but a trifling labor. In this case the record shows that the devolution of the title appeared of record, and for the work of examining the records the solicitors were allowed $27, under sections 79 and 121 of the Chancery act, as corrected in the Revision (at *p. 1274*). Under that act it has been the practice in many cases for masters to allow solicitors for their own work in making searches, precisely as if the clerk or register had been employed for that purpose. Presumably a large portion of the $27 in this case went to the solicitors. No proof was offered to show that the amount was not compensatory, or that any work of that kind done was not covered by the amount allowed by the master.

The answer of the solicitors further sets up that they made inquiries for one absent defendant, a Mr. ———, and proceeded against him by publication. No proof was offered, nor does the answer set out the amount of the labor involved in such inquiry. This defendant having a second mortgage, and being also liable on complainants' bond secured by their mortgage, called on the solicitors and asked their advice in the premises and the favor of a special notice of the sale, which was given to him. That advice and work were not given or done on the retainer of the complainants, and were in nowise necessary for

the proper prosecution of the suit. Hence the complainants clearly are not liable to pay for them.

The other special service, outside the fee-bill, was attending the sheriff's sale, which took place in the same town in which the solicitors' office was located, and afterwards receiving the money from the sheriff and paying it to their clients. At first I was inclined to think that the solicitors were entitled to retain pay for that service—attending the sale—but, upon reflection and in view of a section of the Chancery act now to be referred to, I have concluded that they are not.

I refer to the one hundred and thirteenth section, originally passed in 1872, wherein it is provided :

"That hereafter in all suits and proceedings in the court of chancery, instead of the retaining fee now allowed to counsel by statute, it shall be lawful for the chancellor, on final decree, to allow and order paid to the counsel in the cause such sum as the chancellor may consider justly warranted by the *interests involved in the litigation and the services rendered,* which allowance shall be included in the bill of taxed costs and collected with the other items of said bill in the same manner that the retaining fee has been heretofore; and the retaining fee now allowed to counsel by statute shall not hereafter be allowed in the cases herein provided for."

In 1875 this section was amended by declaring that the amount to be allowed should not be less than one nor more than five per cent. of the amount of the decree.

That act, by construction, has been confined in its application to foreclosures. Thus construed, I think its enactment and amendment, in connection with the act providing for taxation of the search fees as a part of the recoverable costs, shows the policy of the legislature to be to make the taxable and recoverable costs of foreclosure compensatory to the solicitors, so that, in ordinary undefended cases, with a client at hand capable of attending to business, they should have no reason to charge beyond the amount of the taxed bill.

The importance of this is seen when we consider that it enables an executor or administrator safely and intelligently to appraise the assets of an estate so far as they consist of mortgage debts, and it also enables trustees and guardians, as well as other

investors, to loan their money on mortgage security, with a reasonable assurance that, in case of death or other misfortune befalling the mortgagor or other owner of the equity of redemption, they may collect their money in full without depleting the body of the fund.

And my own observation has been that the general understanding and practice throughout the state has not been in accordance with the practice proven to exist in Middlesex county, but that usually and in the absence of defence or special complications requiring extra work and with a client at hand capable of doing a client's work, a mortgage can be foreclosed by respectable and careful solicitors without cost to the holder thereof.

Undoubtedly there are many small matters of service which a solicitor and counsel must perform in foreclosing a mortgage, such as interviews and correspondence with the clerks and with his client, and he must have a general supervision of the suit, and take a certain degree of care and responsibility, and that care and responsibility are increased by the amount of the mortgage. I think this general care includes at least one attendance at the sheriff's sale to advise the client in bidding, and the receiving and paying over the money, if a sale takes place, to a third party. And it was, as it appears to me, to cover all this that the legislature provided that the chancellor might make an allowance to counsel in each case. Be that as it may, I think that if a solicitor intends to charge beyond taxed costs he should so stipulate in advance, and that in the absence of such stipulation and of any work outside that above mentioned, he cannot charge more.

The practice is and always has been, in the absence of a special application, for the clerk to fix the allowance to counsel according to the amount of the decree by a scale heretofore approved by the chancellor. But special applications in special cases and for special reasons for a greater amount than that inserted by the clerk, are not uncommon. In this case, if the solicitors were not satisfied with the amount which they are presumed to have known they would receive by the clerk's fixed scale, they should have applied to the chancellor for a greater allowance. Not

having done so and not having stipulated in advance, they cannot now claim it from the complainants.

Stress was laid, in the argument, upon the general practice of attorneys and solicitors to charge and retain a collection fee out of moneys passing through their hands.

I am unable to see how that practice can help the solicitors here. In this case, all the work attending it was simply receiving the money from the sheriff and paying it to the complainants, and that was merely mechanical banker's clerk work, which, if strictly compensated for, would not amount to one-eighth of one per cent., and is properly included in and covered by the general allowance above mentioned. Besides, I do not think that, strictly speaking, it is a part of the work or duty of a solicitor to receive the money from a sheriff—other than his own costs—and to pay it over, and that he is quite at liberty to permit his client, when, as here, he lives in the county, to call at the sheriff's office and receive it himself. Be that as it may, in my judgment the labor of receiving and paying over money is altogether too trifling to be the subject of a charge for compensation by a solicitor. In fact, it seems to me quite beneath the dignity of the profession. If such a charge be allowed to a solicitor, then it should be also allowed to an ordinary agent or factor, and its allowance would result in a serious tax on all the numerous financial payments occurring in ordinary business transactions. In practice, in the ordinary affairs of life, the mere receiving, counting and handling money is not made the subject of a charge for work and labor done. And, really, the line must be drawn somewhere in these little matters or the result would be ridiculous. It would be ridiculous to charge by the folio for writing the words "Received payment," above the signature to a taxed bill of costs, and for counting the money which paid it, and an extra charge if change be required. But, as before remarked in the present case, whatever of chargeable service was involved in handling the money, was covered by the general allowance before referred to.

I do not understand the mere handling of the money to be the basis upon which a lawyer's charge for collection of mercan-

tile debts and claims is made. That, according to my experience, rests upon an entirely different basis, and one that is sufficiently substantial. When a bond and mortgage is placed in a solicitor's hands for foreclosure, his task is simply to enforce a specific lien upon a specific piece of property, but when an open account or mercantile contract is placed in an attorney's hands for collection, usually a quite different task is set before him. He may be able to collect the money by negotiation or threats of suit. Failing in that, he must first obtain a judgment and issue execution. That task is generally, and when there is no defence, simple enough, and resembles the proceedings in an ordinary foreclosure suit. Now, I have yet to learn that there is any reasonable basis in such a case, and in the absence of a special contract on the subject, for a claim by the attorney for any compensation beyond the amount of the taxed costs. But the work of the attorney who undertakes to collect a mercantile debt does not usually stop with the recovery of the judgment. He must first find and point out to the sheriff property subject to levy. If he finds property subject to levy, he may still find it encumbered by counter-claims in the shape of fraudulent covers or what not. In short, as every attorney of experience knows, in the ordinary collection of mercantile claims, suing and obtaining judgment is a small part of the labor and responsibility. The principal labor, and that which calls for the greatest skill, acuteness and diligence, is in the finding of the property, either in tangible shape for levy, or in the intangible shape of credits due the debtor, to be reached only by supplemental proceedings or creditor's bill.

These services are all outside of the fee-bill, and for them attorneys are entitled to charge and usually clients are quite willing to pay.

But no such labor occurs in an ordinary, undefended foreclosure suit. There is, in such a case, no collection, properly speaking, such as occurs in an ordinary collection case at law. The labor, care and responsibility in conducting a foreclosure proceeding, with a domestic client endowed with usual business capacity, are the same in case the property brings nothing at the

Mundy v. Schantz.

sale or is bought in by the client, as it is when the amount of the decree is realized from a purchase by a third party.

These considerations lead me to the conclusion that the amount of the taxed bill of costs is all that the solicitors were entitled to in this case.

The power of the court to deal with this matter in this summary manner was questioned, and it was urged that the complainants should be left to their action at law, giving the solicitors an opportunity to set off their claim for services. If their claim arose out of matters outside the proceedings in this cause the point might be well taken. But the question involves their conduct in the cause, as officers of this court, and with regard to such matters I understand them to be subject to the summary order of the court. It is common practice to order an attorney or solicitor to pay over money which he has received in his capacity as an officer of this court. *Weeks Attor.* § *94,* and cases cited; especially *Matter of Dakin, 4 Hill 42; People* v. *Smith, 3 Cai. 221; Starr & Riger* v. *Vanderheyden, 9 Johns. Ch. 252; Merritt* v. *Lambert, 10 Paige 352; In re Lawrence, 2 Sm. & G. 367; 23 L. J. Eq. 791; Ex parte Staats, 4 Cow. 76; Matter of Aitkin, 4 Barn. & Ad. 47; Ex parte Hall, 7 J. B. Moore 437; Mawhood* v. *Milbanke, 15 Beav. 36; Bailey & Hope, Re Barnard, 14 Beav. 18; Ex parte Wortham, 4 De G. & S. 415; Re Becke, 18 Beav. 462; Re Cullen, 27 Beav. 51; Re Bainbridge, 14 Beav. 645; Re Rush, L. R. 9 Eq. Cas. 147.*

In the cases in *9 Johns. Ch.* and *10 Paige* the court went into and determined the amount of compensation due the solicitors. The same thing was done by Lord Hardwicke in *Drapers' Co.* v. *Davis, 2 Atk. 295.* And see, in this connection, the case of *Wescott* v. *Hinckley, 27 Vr. 343.*

These cases establish the doctrine that it matters not that the money did not come into the hands of a solicitor in the course of a suit. The question is whether it came into his hands in his character of attorney or solicitor of the court.