CITY OF HACKENSACK, petitioner-respondent,

*v.*

WALTER G. WINNE, defendant-appellant.

[Argued February 6th, 1934. Decided May 4th, 1934.]

*Mr. Walter G. Winne* (of counsel *per se*), for the appellant.

*Mr. Donald M. Waesche,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

The order made in this proceeding and the proceeding itself both appear to us to be irregular and beyond the jurisdiction of the court of chancery in the form which they have taken. The question considered by the vice-chancellor, and decided by him, was in substance whether the appellant, Winne, who had been city attorney of Hackensack and, as such, had been conducting a *certiorari* proceeding in its behalf in a court of law and who had a claim against the city for services as such attorney, should be required to turn over to the city, or to his successor in office, the papers in that suit on which he claimed to have a lien as such city attorney. This seems to have been the substantial controversy between the parties although the allegations on the part of respondent are sufficiently general in form to include other matters besides the particular litigation referred to.

This proceeding was begun by the filing of a petition, not in any pending cause, and not referring to any cause pending in the court of chancery. It alleged, after the usual formal preliminaries, that Mr. Winne had been city counsel, but that his employment as such had terminated; that at the time of the filing of the petition, he had "in his possession certain papers and property belonging to the city of Hackensack which he refuses to surrender to said city until certain bills which he has rendered the city are paid." Incidentally it may be said that this allegation is specifically denied by the answer to the petition, which, however, goes on to state that Winne wrote a certain letter to the city manager refusing to deliver the papers and property in his possession until his bill should be paid. This was admitted with the qualification that Winne offered to submit the matter to an informal arbitration by any one or more of five lawyers whom he named

in his letter. The petition further alleges that Winne at the time was conducting two cases in which the city was involved that needed immediate attention and that he had in his possession the papers in those cases. This is admitted, and it is conceded that the cases in question were two actions of *certiorari* in the supreme court by two different prosecutors attacking the imposition of an assessment for the improvement of a street. It further appears that the city did not admit the propriety of Mr. Winne's charges as to amount and in any event was unable to pay his bill because it did not have the money to do so. It further appeared that while Mr. Winne had collected the sum of $786.85 on a money claim by the city against a corporation in receivership, he professed himself as willing to turn over this money to the city and, in fact, he did so before the hearing; so that it was out of the case.

Upon the filing of the petition an order was made requiring Mr. Winne to show cause before the court of chancery "why he should not be directed to turn over to (the city manager or the new city attorney) all the papers, money, property or matters of any kind whatsoever now in his possession belonging to the city of Hackensack." There is no subpœna or other process for the appearance of Mr. Winne and, so far as we can make out, he was notified of the proceeding merely by service of a copy of the order to show cause. At all events, he answered, and at the outset challenged the jurisdiction of the court to determine the matter, but expressed his willingness to "deliver all pertinent papers and records whether the property of the city or the property of this defendant, provided the officials of the city of Hackensack will advise this defendant that within any reasonable length of time they will discharge the indebtedness of the city to this defendant." The answer mentioned the payment over of the above mentioned sum of $786.85, and concludes by reiterating the assertion of a right to a lien and also the challenge to the jurisdiction of the court of chancery in summary proceedings, against a solicitor of the court except as regards the recovery of money, and that the petition does not show any money

retained by Winne as solicitor and, as a matter of fact, no money is retained by him.

The vice-chancellor in a short memorandum, which is not reported, held that as against the city the appellant as attorney had no right of lien; and went on to assert the jurisdiction of the court to proceed summarily, not only in a case of dishonesty, which does not appear to be here asserted, but where the behavior of the solicitor is "oppressive or clearly illegal." He held that the action of Mr. Winne in retaining the papers was illegal and oppressive whether so intended or not; and ordered that within ten days he turn over and deliver "all papers which came into his possession as counsel for the city and which he still holds pertaining to any and all suits or legal proceedings of any kind to which the city of Hackensack is or was a party and also to turn over and deliver to the said city manager any and all papers and property of any kind whatsoever in his possession belonging to the city of Hackensack or to which the city of Hackensack is legally entitled to the possession of."

As already noted, we think that the whole proceeding was irregular, and we think further that the court of chancery was without jurisdiction in the premises. We think that the proceeding was irregular because it appears to be an original proceeding commenced and carried on in a summary way by a petition and order to show cause and not by a bill and subpœna to answer. So far as we are aware, there is no reported decision of any case involving a similar controversy which was not either commenced by a bill or was ancillary to a proceeding already in the particular court of equity involved.

In *Koenig* v. *Harned, 13 Atl. Rep. 236* (not officially reported), the petition was ancillary to a divorce suit in which the solicitor had collected alimony and retained his fees therefrom. It is worthy of note that the vice-chancellor had serious doubts with regard to the jurisdiction even under those circumstances.

In *Tate* v. *Field, 60 N. J. Eq. 42* (see the same case reported in *56 N. J. Eq. 35,* and *57 N. J. Eq. 53, 632*), the

solicitor had collected moneys in an equity suit and made an
exorbitant claim against them for his fees.

In *Crane* v. *Gurnee, 75 N. J. Eq. 104,* the application was
practically one for retaxation of costs in a chancery suit as
against the opposing party.

In *Bullock* v. *Angleman, 82 N. J. Eq. 23,* the defendant
collected a mortgage without suit and failed to pay over the
proceeds, whereupon the client mortgagee filed a bill substan-
tially for accounting and enforcement of a trust. The notice-
able fact is that the procedure was the ordinary procedure of
bill and answer, although the hearing was more or less sum-
mary as between solicitor and client.

The case of *Mundy* v. *Strong, 52 N. J. Eq. 833,* cited by
the vice-chancellor, was a case in which the solicitor had fore-
closed a mortgage and retained a collection fee in addition to
his taxed costs from the proceeds of sale. The petition was
by the complainant in foreclosure, and in the foreclosure suit.

In the case of *Lynde* v. *Lynde, 64 N. J. Eq. 736,* also relied
on by the vice-chancellor, the facts were that Mrs. Lynde had
obtained a divorce in New Jersey through another lawyer
than Mr. Westervelt, against whom she filed her petition, but
the divorce decree had made no provision for alimony, and
she then employed Mr. Westervelt, who had the decree opened,
secured an amended decree for alimony, and being a prac-
titioner in New York as well as New Jersey, was employed to
enforce the alimony decree in New York, which he did, and
collected some $38,500, partly by judgments and partly by
settlement, but paid his client only $16,000 of that amount
There is a lengthy discussion by Mr. Justice Pitney, after-
wards chancellor of this state, which need not be abstracted
at length. Suffice it to say that the jurisdiction of the court
of chancery to compel Mr. Westervelt to respond in that court
was based upon his employment in the chancery suit, and the
petition was filed in that suit.

We have looked at the early New York cases in this regard,
and as far as we can discover, they also are based, where
applicable, on the foundation of pre-existing litigations in
equity. *In re Peterson, 3 Paige 510; In re Bleakley, 5 Paige
311; Merritt* v. *Lambert, 10 Paige 352.*

The later cases in this state turn mainly on the questions of contempt in a pending cause; and where the court of chancery has found it necessary to suspend a solicitor temporarily from practice in chancery, for contempt or unethical practice in that court, this finding was coupled with a reference of the matter to the supreme court for ultimate determination. *In re Megill, 114 N. J. Eq. 604; Ertag* v. *Cavallo Construction Co., 104 N. J. Eq. 331; Proff* v. *Shirvanian, 110 N. J. Eq. 639.* Other cases between attorney and client bearing on the propriety and amount of fees of the latter took the ordinary form of bill and answer. *Dwyer* v. *Anderson, 113 N. J. Eq. 210; Turnley* v. *Nixon, 112 N. J. Eq. 116; Raimondi* v. *Bianchi, 100 N. J. Eq. 238,* in which the attorney had recovered a judgment for counsel fees and client obtained an injunction in chancery against the enforcement of the judgment. The case was taken to this court and reversed (*102 N. J. Eq. 254*), where we held (at *p. 258*) that "by these long and firmly established rules the cause presented by respondent's bill was such as to give the court below not even a semblance of jurisdiction, and the bill of complaint should have been dismissed."

We have already had occasion to advert to the dangers inherent in the departure of the court of chancery from its well recognized jurisdiction by the setting up of a procedure informal in character and liable to lead to most harmful consequences. *Grobholz* v. *Merdel Mortgage Investment Co., 115 N. J. Eq. 411.*

The particular proceeding was also not within the jurisdiction of the court of chancery. It was not a bill for an accounting; it was not in form nor, as we think, in substance a proceeding for the enforcement of a trust. If anything, it seems to have been in the nature of a proceeding not necessarily punitive in character, but essentially disciplinary by a court against a practitioner. There is not a scintilla of proof or allegation that Mr. Winne had been conducting any chancery proceeding in which he had any money, papers or other property as a solicitor in chancery and to which the city could lay claim. What allegation and

proof there was went entirely to the existence of certain papers in Mr. Winne's hands relating to two actions of *certiorari* against the city, as already stated. He admitted that he had certain papers in his possession, but alleged that they belonged to him and not to the city and were his own office records in connection with the matter. There was no proof of any kind taken, so far as shown by the printed book in the cause. The order made by the court of chancery is an order at large and directed to the transfer of all papers in his hands. We can find no foundation for such an order. So far as relates to the papers in the *certiorari* suits, they related to litigation entirely outside the scope and jurisdiction of the court of chancery and exclusively within the jurisdiction of the supreme court. Mr. Winne derived his power to act as a solicitor and counselor in the court of chancery from the fact that he had been admitted to practice upon the recommendation of the supreme court, which court has the ultimate exclusive power to discipline practitioners at the bar. This was settled in the case of *In re Hahn, 85 N. J. Eq. 510,* in which this court held that the court of chancery was without jurisdiction to disbar a solicitor. The matter of temporary suspension from chancery practice pending consideration of charges by the supreme court was expressly passed (page 524), though in *Erlag* v. *Cavallo Construction Co., supra,* it was contemplated in chancery. It may well be true, and we think it is true, that where a solicitor has been retained in an equity litigation and in that capacity has come into possession of papers belonging to his client which he refuses on demand to give up, he is amenable to the court of equity summarily by a petition in the cause. But where it is not the case of a solicitor at all, but an attorney at law employed in an action at law and in the supreme court, in a matter in no way related to equity jurisdiction, we are clear that power to deal summarily with that attorney in respect to that matter does not reside in the court of equity. As we have said, there seems to be no semblance of claim established by any sort of proof that Mr. Winne holds any papers or other documents or moneys belonging to the city of Hackensack in connection with any other

proceeding, and particularly not in connection with any proceeding in equity.

The order of the court of chancery is therefore reversed with directions to dismiss the petition as beyond the jurisdiction of the court of chancery. Whether the whole matter could be transferred to the supreme court under the Transfer of Causes act is a point that has not been raised and which we have not considered.

*For affirmance*—BODINE, HETFIELD, JJ. 2.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, DEAR, WELLS, DILL, JJ. 13.