OPINION OF THE COURT
Shanley N. Egeth, J.
The defendant Pittsburgh Corning Corporation (Corning) moves for an order dismissing the cross claim interposed against it by a codefendant Raybestos-Manhattan, Inc. (Raybestos) upon the grounds that the attorneys who have appeared in the action on behalf of Raybestos are not authorized to practice law in this State and have no capacity to represent any client in New York litigation. Raybestos has cross-moved for an order pursuant to 22 NYCRR 520.8 (e) admitting an employee of its attorneys, Kathleen F. Moran, Esq., to practice in New York pro hac vice, for all purposes in connection with this litigation.
defendants’ attorneys
In this action to recover damages for personal injuries arising out of alleged exposuré to asbestos, an answer contain *556 ing a cross claim was interposed on behalf of the defendant, Raybestos, by the firm, of Morgan, Melhuish, Monaghan and Spielvogel, Esqs. (law firm), attorneys with offices at 301 South Livingston Avenue, Livingston, New Jersey. The pleading served contained the firm name of the attorneys, its New Jersey address and New Jersey telephone number. It is conceded that at the time the answer was served, the law firm had no New York office or telephone.
The New Jersey firm representing Raybestos appears to be a prominent, middle-sized New Jersey law firm of outstanding reputation. From its letterhead and the papers submitted on this motion, it appears that the law firm has 12 partners, all of whom are admitted to practice in New Jersey, and none of whom are admitted to practice in New York. Its letterhead also lists the names of 18 employee associates, only one of whom, Lester S. Goldblatt, is admitted to the New York Bar. At the time the motion was made, Mr. Goldblatt resided in New Jersey, was admitted to the New Jersey Bar, and practiced law in his employers’ New Jersey office. He did not maintain a New York office or regularly practice law in this State. Kathleen F. Moran, the subject of the cross motion, is an associate attorney employed by the law firm who is admitted to practice only in the State of New Jersey. It is claimed that she has an application pending for admission to practice in New York, and that she is a specialist in defense of asbestos litigation.
After the instant motion was made, it appears that the law firm began to type "New York Office: 277 Broadway, New York, New York 10007” on its letterhead. A listing for the law firm was inserted in the lobby directory of the building. Its letterhead contains two stars next to the name Lester S. Goldblatt, and typed under the New Jersey address is the legend "** Admitted to New York and New Jersey Bars”. The letterheads do not reveal a New York telephone number, but an affidavit of Mr. Goldblatt, dated December 4, 1978, discloses a newly procured telephone number, and indicates that the New York office referred to is a temporary one for the law firm, and that it is ordering new New York stationery, and arranging for more complete staffing in New York. It appears that all of this activity is being undertaken in the name of the law firm.
THE MOTION
At the time that this motion was made, the law firm had no *557 office in New York, and purported to have none. Corning contends that the answer interposed for Raybestos must be deemed a nullity because its attorneys are not authorized to practice law in New York due to noncompliance with section 470 of the Judiciary Law, which requires a New York office for the practice of law in this State.
The movant is correct as to the requirements of the Judiciary Law. Section 470 of the Judiciary Law clearly mandates that an attorney must maintain an office in New York in order to practice here (Park Lane Commercial Corp. v Travelers Ind. Co., 50 Misc 2d 231). This requirement appears to be absolute. The requirement of residence, as a condition to the continued right to practice, appears to have been ameliorated for attorneys who reside in an adjacent State, but only upon condition they maintain an office for the practice of law in this State (Matter of Tang, 39 AD2d 357; Matter of Behrle, 43 AD2d 687).
 The subsequent procurement of an office in New York by the law firm has not cured the impediments against its practice of law in this State. The law firm has no capacity to practice law in this State, nor does it have capacity to maintain an office for the practice of law in this State. It has no partner who is admitted to practice in this State. It therefore has no resident partner (admitted in this state) who has the ability to make and be responsible for making decisions for the law firm. It has no attorney in charge to whom the public, clients and, of even greater importance, the supervising judicial authorities, may look to for compliance with the rules, regulations and ethical standards relating to the practice of law in this State. There is no partner in charge for the firm admitted in this jurisdiction against whom disciplinary proceedings can be brought or sanctions imposed. As a matter of public policy, this deficiency may not be cured by the hiring of an associate admitted to practice law in this State. Such an employee is not capable of setting policy for the firm, holding himself out to the public as the firm, or accepting the legal responsibility for all of its acts and those of its other employees.
These limitations are made clear in a number of positions adopted by the New York State Bar Association and the American Bar Association.
Opinion No. 175 of the Committee on Professional Ethics of *558 the New York State Bar Association (1971) held as follows: "To avoid the danger of franchising and the risk of misleading the public, the Committee is of the opinion that a multi-state law firm may not use in New York a name composed of one or more lawyers not admitted to practice in New York unless the local lawyer is a true partner with a real share in the overall proñts, liabilities and professional responsibilities of the entire ñrm” (emphasis added). This opinion resulted in a relaxation of prior standards. It is made abundantly clear that the "name used by such a firm must not be misleading. N.Y. State 144 (1970); N.Y. City 684 (1946); N.Y. City 700 (1946); ABA 316 (1967).” (Opinion No. 175 of Committee on Professional Ethics of NY State Bar Assn [1971].) Prior to adoption of this opinion, Ethics Opinion No. 205 (NY State Bar Assn [1953]) barred the use in a partnership name "of one not locally admitted, despite explanatory statements on the letterhead, shingle, etc., since the name used * * * would imply that all the named partners were locally admitted.”
Subdivision 5 of Opinion No. 316 of the ABA (1967) reads as follows: "In any interstate partnership, association, or employment relation, the most important requirement is that the local man must be admitted in the state and must have the ability to make and be responsible for making decisions for the lawyer group”.
Subdivision^ 6 of ABA Opinion No. 316 reads as follows: "Lawyers in different states associating themselves for the practice of law must not mislead the public. A partnership must not be implied where none exists, and it must always be clearly indicated after the name of each the limitations of their authority in the states where they have offices”.
Upon the basis of these decisions it seems absolutely clear that there is no way that an out-of-State law firm, without a partner admitted to practice within this State, may maintain an office for the practice of law in this State in its firm name. These decisions have relaxed prior practice and name limitations to enable a nonadmitted partner to be shown in the firm name. They continue to bar a firm name which contains no admitted partner within the jurisdiction. Such authorization would be totally misleading and conducive to fraud upon the public. The use of the letterhead in this case, or probably, the one being printed with a New York address, would justifiably lead the public to conclude that they *559 were dealing with a firm of New York lawyers, although in actuality they were not.
The employment of Mr. Goldblatt or Ms. Moran, if she were to be admitted in this jurisdiction, or any other New York admitted attorneys cannot cure the impediments which bar this law firm from practicing in New York. The law firm may not serve as attorney of record in any litigation in New York, nor may it properly maintain any office for this purpose in New York. Nor may it do so in the name of the employee, if that employee is not the attorney of record charged with the total responsibility for the conduct of the litigation and is not accountable to the public, disciplinary, judicial and licensing authorities. Even lawyers operating as a professional corporation are barred from maintaining a branch office here in an associate’s name (Ethics Opinion No. 495, NY State Bar Assn Ethics Opinion, Nov., 1978).
MOTION GRANTED
For the reasons set forth herein, the answer interposed by the law firm on behalf of Raybestos must be and is stricken. In the interests of justice, the defendant Raybestos is granted leave, within 30 days following service of a copy of any order to be entered herein, to cause new pleadings to be interposed in this action in its behalf by any attorney or attorneys authorized to practice law in this State. Such new pleading may upon request by Raybestos be deemed served and/or filed nunc pro tunc as of the date of service or filing of the pleadings heretofore served.
CROSS MOTION DENIED
The law firm has moved pursuant to 22 NYCRR 520.8 (e) to admit pro hac vice its associate Kathleen F. Moran, and to authorize her to practice in this State by participating in the trial of this matter.
This motion must be denied for a number of reasons at the present time. Initially, in view of the determination that the movant employer of Ms. Moran is not qualified to practice law in New York, it would certainly be inappropriate to entertain any present application to grant the instant application. The new attorney to be engaged by the defendant Raybestos will be required to determine the manner in which to proceed with its defense, and the personnel it requires for *560 such purpose. The present movant no longer possesses status to pursue the application.
In addition, the papers seem quite contradictory and confused as to the relief sought. Despite the assertion made for Corning in opposition to this application, this cross motion is restricted only to admission for this action and not all future asbestos claims. There is additional confusion, however, as to what is sought. If Ms. Moran is a lawyer admitted in the State of New Jersey, employed by and supervised by an attorney of record for the defendant Raybestos in this litigation, she is capable of performing such pretrial duties which are assigned to her by an admitted, responsible supervising attorney without prior application for admission to the Bar of this State (see subds 2 and 4 of Comment to Formal Opinion 316, ABA [1967]). The instant application does not seek to admit the applicant for all purposes to serve as attorney of record for this defendant. It would therefore appear to be unnecessary at the present time. An application for permission to conduct or assist in the conduct of the actual trial should be made to the Justice assigned to conduct the trial. It may then appropriately be made before such Justice.
Accordingly, the cross motion is denied with leave to renew de novo in an appropriate application after representation of this defendant has been clarified, and at a time when an actual need for such relief exists.
Settle order.
OVERVIEW"
Disposition of this motion has necessarily entailed some consideration and examination of the problems engendered by the present activity upon the part of out-of-State law firms which have opened offices and "clinics” for the practice of law in this jurisdiction. The elimination of the bar against advertising by attorneys seems likely to substantially increase this type of activity. Television, radio, newspapers and periodicals are now punctuated with commercials and advertisements indicating that out-of-State lawyers, seeking to establish national practices, are opening offices in our State. It would appear that careful and heightened scrutiny and supervision is required to assure the protection of the public against misleading use of firm names and any impropriety in the manner of practice of law. A true partnership, with a licensed resident partner, responsible and in charge, is necessary un *561 der existing requirements. There must be an actual sharing of profits and losses. The firm letterhead and literature must contain the name of at least one New York admitted partner and clearly indicate those who are not admitted in this jurisdiction. There are other and applicable requirements which must be complied with.
The limitations and restrictions which are presently applicable to extraterritorial practice were enacted as a time before extensive commercial advertising was authorized, and new techniques developed and emerged to supply legal services.
Perhaps, we have already arrived at a time when it has become necessary for the protection of the public that our Legislature and bar associations now examine practice relating to the manner and quality of the supply of legal services and re-examine the efficacy of existing regulation.