11-4283-cv
Schoenefeld v. State of New York, et al.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT
_____

August Term, 2012

(Argued: October 3, 2012                          Decided: April 8, 2014)

Docket No. 11-4283-cv
_____

EKATERINA SCHOENEFELD,

*Plaintiff-Appellee*,


-*v.*-


STATE OF NEW YORK, NEW YORK SUPREME COURT, APPELLATE DIVISION, THIRD
JUDICIAL DEPARTMENT, COMMITTEE ON PROFESSIONAL STANDARDS OF NEW YORK
SUPREME COURT, APPELLATE DIVISION, THIRD JUDICIAL DEPARTMENT AND ITS
MEMBERS,

*Defendants*,


ERIC T. SCHNEIDERMAN, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL FOR THE
STATE OF NEW YORK, ALL JUSTICES OF NEW YORK SUPREME COURT, APPELLATE
DIVISION, THIRD JUDICIAL DEPARTMENT, ROBERT D. MAYBERGER, IN HIS OFFICIAL
CAPACITY AS CLERK OF NEW YORK SUPREME COURT, APPELLATE DIVISION, THIRD
JUDICIAL DEPARTMENT, MONICA DUFFY, CHAIRMAN OF THE COMMITTEE ON
PROFESSIONAL STANDARDS "COPS" OTHER THOMAS C. EMERSON,

*Defendants-Appellants*.
_____

Before:                    RAGGI, HALL and CARNEY, *Circuit Judges*.
_____

On appeal from a judgment of the United States District Court for the Northern
District of New York (Lawrence E. Kahn, *J.*), entered on September 7, 2011, granting
summary judgment in favor of Plaintiff-Appellee, declaring New York Judiciary Law § 470

unconstitutional as violative of the Privileges and Immunities Clause because it implicates the fundamental right to practice law and the state failed to establish either a substantial state interest advanced by the statute, or a substantial relationship between the statute and that interest. We believe that the question surrounding the constitutionality of New York Judiciary Law § 470 implicates significant New York state interests and is determinative of this appeal. We therefore reserve decision and certify a controlling question of state law to the New York Court of Appeals.

QUESTION CERTIFIED.

_____

EKATERINA SCHOENEFELD, ESQ., Princeton, NJ, *for Plaintiff-Appellee.*

LAURA ETLINGER, Assistant Solicitor General (BARBARA D. UNDERWOOD, Solicitor General, ANDREA OSER, Deputy Solicitor General, *on the brief*) *for* ERIC T. SCHNEIDERMAN, Attorney General of the State of New York, Albany, NY, *for Defendants-Appellants.*

_____

HALL, *Circuit Judge*:

Defendants-Appellants appeal from the September 7, 2011 judgment of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *J.*) granting Plaintiff-Appellee's cross-motion for summary judgment and declaring New York Judiciary Law § 470 ("Section 470") unconstitutional as violative of the Privileges and Immunities Clause of Article IV, section 2 of the Constitution. Specifically, the district court held that Section 470, which requires nonresident attorneys to maintain an "office for the transaction of law business" within the state of New York in order to practice in New York courts, places an impermissible burden on Plaintiff-Appellee's fundamental right to practice law and that the state "failed to establish either a substantial state interest advanced by [the statute], or a substantial relationship between the statute and that interest." *Schoenefeld v. New York*, 907 F. Supp. 2d 252, 266 (N.D.N.Y. 2011).

2

For the reasons that follow, we respectfully certify a controlling question of state law to the New York Court of Appeals.

## BACKGROUND

Plaintiff-Appellee Ekaterina Schoenefeld ("Schoenefeld") is a solo practitioner licensed to practice law in the states of New York, New Jersey, and California. She is also admitted to practice in a number of federal courts including the Northern District of New York. Schoenefeld graduated from Rutgers University School of Law in 2005. She maintains her residence and law office in Princeton, New Jersey.

Section 470, entitled "Attorneys having offices in this state may reside in adjoining state," provides that "[a] person, regularly admitted to practice as an attorney and counsellor, in the courts of record of this state, whose office for the transaction of law business is within the state, may practice as such attorney or counsellor, although he resides in an adjoining state." N.Y. Judiciary Law § 470 (McKinney 2014). Schoenefeld asserts that she has "never advertised [herself] as practicing law in the state courts of New York and [has] never represented any clients in New York state courts." J.A. at 55. In fact, she states that she has refused occasional requests to represent clients in New York state courts because "accepting these matters would have violated § 470 of the Judiciary Law." *Id.*

Schoenefeld initially brought this action in the Southern District of New York, challenging the constitutionality of Section 470, both facially and as applied, under the Privileges and Immunities Clause of Article IV, section 2 of the Constitution ("P&I Clause" or the "Clause"), the Equal Protection Clause of the Fourteenth Amendment to the Constitution ("Equal Protection Clause"), and the Commerce Clause of Article 1, section 8

3

of the Constitution ("Commerce Clause"). On Defendants' motion, the action was subsequently transferred to the Northern District of New York. The district court then dismissed Schoenefeld's Equal Protection Clause and Commerce Clause claims as well as her claims against the State of New York, the New York Supreme Court, Appellate Division, Third Judicial Department ("Third Department"), and the Committee on Professional Standards of the Third Department ("Committee on Professional Standards").[1] It permitted Schoenefeld, however, to proceed against the remaining Defendants (all individuals serving in their official capacity) on her claim that Section 470 violates the Privileges and Immunities Clause. Following discovery, the parties cross-moved for summary judgment.

The district court determined that Section 470 infringes on one of the fundamental rights protected by the Privileges and Immunities Clause; the right to practice law. The court further concluded that the state failed to demonstrate a "substantial state interest justifying Section 470" as well as a "substantial relationship between Section 470 and the interests that Defendants claim it advances." *Schoenefeld*, 907 F. Supp. 2d at 264. The district court therefore held the statute unconstitutional and granted Schoenefeld's motion for summary judgment. Because the question of the constitutionality of New York Judiciary Law § 470 turns on the interpretation of a provision of the statute that implicates significant New York state interests and is determinative of this appeal, we reserve decision and certify a controlling question of state law to the New York Court of Appeals.

---

[1] The complaint named as Defendants the State of New York; Andrew Cuomo, then Attorney General for the State of New York; the Third Department; All Justices of the Third Department; Michael J. Novack, then Clerk of the Third Department; the Committee on Professional Standards and its members; as well as Thomas C. Emerson, then Chairperson of the Committee on Professional Standards.

**DISCUSSION**

The Privileges and Immunities Clause provides that "[c]itizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2. The Clause's purpose is to "fuse into one Nation a collection of independent, sovereign States." *Toomer v. Witsell*, 334 U.S. 385, 395 (1948). "[I]t is '[o]nly with respect to those 'privileges' and 'immunities' bearing on the vitality of the Nation as a single entity' that a State must accord residents and nonresidents equal treatment." *Supreme Court of N.H. v. Piper*, 470 U.S. 274, 279 (1985) (quoting *Baldwin v. Montana Fish & Game Comm'n*, 436 U.S. 371, 383 (1978)). While "[t]he Privileges and Immunities Clause does not promise nonresidents that it will be as easy for [nonresidents] as for residents to comply with a state's law; it . . . protects nonresidents from legal classifications that treat them more harshly (without justification)." *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1045 (10th Cir. 2009). To prevail on a P&I Clause claim, "a plaintiff must demonstrate that the 'State has, in fact, discriminated against out-of-staters with regard to the privileges and immunities it accords its own citizens.'" *Bach v. Pataki*, 408 F.3d 75, 88 (2d Cir. 2005), *overruled on other grounds by McDonald v. Chicago*, 561 U.S. 2---, 130 S. Ct. 3020 (2010) (quoting *Conn. ex rel Blumenthal v. Crotty*, 346 F.3d 84, 94 (2d Cir. 2003)). "Where a protected privilege or immunity is implicated, the State may defeat the challenge . . . by demonstrating: '(a) a substantial reason for the discrimination, and (b) a reasonable relationship between the degree of discrimination exacted and the danger sought to be averted by enactment of the discriminatory statute.'" *Id.* (citations omitted).

5

The right to practice law has long been held to be one of the privileges and immunities within the Clause. *Piper*, 470 U.S. at 281 ("[T]he practice of law falls within the ambit of the Privileges and Immunities Clause."). Appellants do not argue to the contrary on appeal but instead contend that the office requirement imposed by Section 470 can be read in a manner that does not implicate the P&I Clause, that is, an "office for the transaction of law business" requires only an address for accepting personal service, which "might" be satisfied by designating an agent for the service of legal papers. *See* Appellants' Br. at 25. Alternatively, Appellants contend, if this Court does determine that the statute discriminates against nonresident attorneys, the office requirement still does not violate the Clause as it imposes an "incidental burden on the ability of nonresident attorneys to practice in New York courts" substantially related to sufficient state interests—service of legal papers and "enabling the New York courts to adjudicate [service related] disputes." Appellants' Br. at 20-21.

Preliminarily, we note that with respect to New York residents the Judiciary Law does not impose a specific obligation on an attorney to maintain an office for the transaction of law business in New York. *See Lichtenstein v. Emerson*, 656 N.Y.S.2d 180, 182 (N.Y. Sup. Ct. 1997), *affirmed*, 674 N.Y.S.2d 298 (1st Dep't 1998) (upholding constitutionality of Section 470 but noting that a resident attorney may utilize her home as an office). The New York Civil Practice Law and Rules of Professional Conduct require, of course, that an attorney be adequately equipped to maintain a certain level of accessibility and communication with clients, but a review of those laws yields no authority specifically requiring New York

6

residents to maintain any office at all.[2] A New York attorney, therefore, may set up her "office" on the kitchen table in her studio apartment and not run afoul of New York law.

As to nonresident attorneys, however, Section 470 mandates that they shoulder the additional obligation to maintain some sort of separate office premises within the state. In particular, the New York Supreme Court and its Appellate Division courts—the New York Court of Appeals having yet to address this issue—have never interpreted Section 470's office requirement to be satisfied by something less that the maintenance of physical office space in New York state. *See, e.g.*, *Kinder Morgan Energy Partners, LP v. Ace Am. Ins. Co.*, 859 N.Y.S.2d 135, 135 (1st Dep't 2008) (affirming lower court's order dismissing without prejudice action commenced by nonresident attorney who did not maintain a "local office"); *Elm Mgmt. Corp. v. Sprung*, 823 N.Y.S.2d 187, 188 (2d Dep't 2006) (noting that failure to maintain a bona fide office is "noncompliance by the plaintiff's counsel"); *Keenan v. Mitsubishi Estate, N.Y., Inc.*, 644 N.Y.S.2d 241, 242 (1st Dep't 1996) (reversing a dismissal under Section 470 where a New Jersey law firm had "entered into a reciprocal satellite office sharing agreement with a firm located" in New York County); *In re Larsen*, 587 N.Y.S.2d 39, 43 (2d Dep't 1992) (post office box is insufficient to satisfy Section 470); *Application of Tang*, 333 N.Y.S.2d 964, 966 (1st Dep't 1972) ("[T]o practice here an attorney must be resident here or a resident of an adjoining State who *commutes to his office here*." (emphasis added)); *Lichtenstein*, 656 N.Y.S.2d at 181 (interpreting Section 470 as requiring a "bona fide office" and finding that counsel had failed to comply with Section 470 where he maintained as an office a room in the basement of a restaurant owned by a corporation in which he was a shareholder);

---

[2] Rule of Professional Conduct 1.15 requires an attorney to maintain complete and accurate books and records, but nothing in that Rule requires an attorney to maintain an "office."

*Rosenberg v. Johns-Manville Sales Corp.*, 416 N.Y.S.2d 708, 711 (N.Y. Sup. Ct. 1979) (concluding that an "office" is established only where a partner, rather than an associate, is admitted to the New York State Bar and practicing out of a New York office); *see also* Brennan, *Repeal Judiciary Law § 470*, 62 N.Y.S.B.J. 20, 21 (Jan. 1990) (noting that Section 470's predecessor, chapter 43, "can be viewed, essentially, as an accommodation of 'commuters'"). This additional obligation carries with it significant expense—rents, insurance, staff, equipment *inter alia*—all of which is in addition to the expense of the attorney's out-of-state office, assuming she has one.[3]

In the face of the prevailing authority from New York's lower courts and for the reasons explained below, there is no question that resolution of this appeal turns on the meaning of "office for the transaction of law business" as used in N.Y. Judiciary Law § 470. Appellants, seeking to persuade us that the statute is not so onerous as to be unconstitutional, argue that this Court need not read the phrase to require a physical office space with a desk, a telephone, and staff, but rather may hold that the language can permissibly be read to require merely an address at which a nonresident attorney may be served legal papers. Alternatively, Appellants maintain that the designation of an agent in New York to receive service of papers "might even suffice." These arguments, however, are not supported by the New York precedent discussed above. Moreover, the absence of authority from New York's highest court does not provide us license to disregard lower court rulings nor to analyze the question as though we were presented with a blank slate. *See*

---

[3] Although a nonresident attorney could also potentially fulfill the requirement via an "of counsel" arrangement, such an arrangement is nearly equally as burdensome in that it carries with it additional malpractice exposure for the New York firm, which may demand compensation from the nonresident attorney in exchange for establishing an "of counsel" relationship. This is assuming, of course, that a nonresident attorney can find a local firm willing to commit to such a relationship.

*Statharos v. N.Y. City Taxi & Limousine Comm'n*, 198 F.3d 317, 321 (2d Cir. 1999) ("While we are not strictly bound by the decision of the Appellate Division, it is nevertheless a well-established principle that the ruling of 'an intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)); *see also Windsor v. United States*, 699 F.3d 169, 177 (2d Cir. 2012).

We also note that the term "office," by itself, although not exactly pellucid, implies more than just an address or an agent appointed to receive process.[4]  And the statutory language that modifies "office"—"for the transaction of law business"—may further narrow the scope of permissible constructions.  In light of New York's existing jurisprudence, for a federal court to construe the statute such that the word "office" means either an in-state agent authorized to receive process or simply an address for service of papers will take us far beyond the limits of statutory construction that would comfortably apply here.  In sum, as it stands, it appears that Section 470 discriminates against nonresident attorneys with respect to their fundamental right to practice law in the state and, by virtue of that fact, its limitations on non-resident attorneys implicate the Privileges and Immunities Clause.  Absent a controlling interpretation of Section 470 by the New York Court of Appeals, this Court is left to predict how that court would construe the critical language in Section 470—a task, under the circumstances, we prefer to avoid until it becomes necessary for us to undertake it.

---

[4] In its definition most relevant to these circumstances, the Oxford English Dictionary defines "office" as "[a] room, set of rooms, or building used as a place of business for non-manual work; a room or department for clerical or administrative work."  *"Office, n." Definition*, OED Online (3d ed. Mar. 2014) (Apr. 3, 2014), http://www.oed.com/view/Entry/130640?rskey=pvVa8b&result=2&isAdvanced=false.

"[T]he Supreme Court in *Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S. Ct. 1055, 137 L.Ed.2d 170 (1997), urged the federal courts of appeals to use certification in order to avoid deciding constitutional questions unnecessarily or prematurely." *Tunick v. Safir*, 209 F.3d 67, 72 (2d Cir. 2000). We should, therefore, "consider certifying in more instances than had previously been thought appropriate, and do so even when the federal courts might think that the meaning of a state law is 'plain.'" *Id.* at 73. We have also previously made clear that "[w]hether our Court agrees or disagrees with the Court of Appeals' construction of New York law is of no moment." *Portalatin v. Graham*, 624 F.3d 69, 89 (2d Cir. 2010). "Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State." *Johnson v. Fankell*, 520 U.S. 911, 916 (1997). "More, it would be perverse for a federal court to discourage a state court from searching for 'every reasonable construction' of a state statute to 'save [the] statute from unconstitutionality.'" *Portalatin*, 624 F.3d at 90 (quoting *Skilling v. United States*, 561 U.S. 358, 130 S. Ct. 2896, 2929-30 & n.41 (2010)).

"Under Second Circuit Local Rule 27.2, we may certify to the New York Court of Appeals determinative questions of New York law [that] are involved in a case pending before [us] for which no controlling precedent of the Court of Appeals exists." *Osterweil v. Bartlett*, 706 F.3d 139, 142 (2d Cir. 2013) (internal quotation marks omitted). Prior to doing so, we must first determine "(1) whether the New York Court of Appeals has addressed the issue and, if not, whether the decisions of other New York courts permit us to predict how the Court of Appeals would resolve it; (2) whether the question is of importance to the state and may require value judgments and public policy choices; and (3) whether the certified

10

question is determinative of a claim before us." *Id.* (quoting *Barenboim v. Starbucks Corp.*, 698 F.3d 104, 109 (2d Cir. 2012)) (internal quotation marks omitted).[5]

Applying the factors noted above, we determine that the Court of Appeals has not issued any opinion addressing the constitutionality of Section 470, nor has it specifically construed the term "office for the transaction of law business." Moreover, in light of the potential that the requirements in Section 470 violate the P&I Clause, we cannot predict at this time, based on the current decisions of other New York courts, how the New York Court of Appeals will interpret the statute.

We next consider "the importance of the issue to the state," *Runner v. N.Y. Stock Exchange*, 568 F.3d 383, 388 (2d Cir. 2009) (quotation and internal quotation marks omitted), and "whether it is the kind of question that 'may require value judgments and public policy choices,'" *Osterweil*, 706 F.3d at 143 (quoting *Barenboim*, 698 F.3d at 109). The requirements imposed on a nonresident attorney to be able to practice law in New York are important to the state and clearly implicate value judgments and policy choices—ones that should not be ceded to a federal court of appeals when it is unnecessary to do so in the first instance. Additionally, remedies imposed for an attorney's failure to comply with Section 470 will have a serious impact on both lawyers and litigants themselves. For example, noncompliance with Section 470's requirements may result in dismissal of a complaint filed by the noncompliant nonresident attorney, *see Lichtenstein v. Emerson*, 674 N.Y.S.2d 298, 298 (1st Dep't 1998), or disciplinary charges against that attorney, *see In re Larsen*, 587 N.Y.S.2d at 43.

---

[5] We have noted, however, that "[c]ertification . . . is not proper where the question does not present a complex issue, there is no split of authority and sufficient precedents exist for us to make [a] determination." *Tinelli v. Redl*, 199 F.3d 603, 606 n.5 (2d Cir. 1999) (quoting *McCarthy v. Olin Corp.*, 119 F.3d 148, 153-54 (2d Cir. 1997)) (internal quotation marks omitted).

Given the gravity of these penalties and the many thousands of attorneys licensed to practice in New York courts who stand to be affected by a decision concerning the constitutionality of Section 470, the issue meets the second requirement for certification.

Finally, we consider "the capacity of certification to resolve the litigation." *Runner*, 568 F.3d at 388. As this case now stands, whether Section 470 survives constitutional scrutiny depends on the construction of the in-state office requirement imposed on nonresident attorneys. If the New York Court of Appeals accepts and answers our certified question(s), that answer, in all likelihood, dictates the outcome of the constitutional privileges and immunities analysis we have commenced and must complete as we decide the appeal before us.

## CONCLUSION

Because it is "our preference that states determine the meaning of their own laws in the first instance," *Joseph v. Athanasopoulos*, 648 F.3d 58, 68 (2d Cir. 2011), we respectfully certify the following question to the New York Court of Appeals:

> Under New York Judiciary Law § 470, which mandates that a nonresident attorney maintain an "office for the transaction of law business" within the state of New York, what are the minimum requirements necessary to satisfy that mandate?

The New York Court of Appeals may, of course, expand, alter, or reformulate this question as it deems appropriate. *See Kirschner v. KPMG LLP*, 590 F.3d 186, 195 (2d Cir. 2009).

It is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a certificate in the form attached, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this

12

Court.  This panel will retain jurisdiction to decide the case once we have the benefit of the views of the New York Court of Appeals or once that court declines to accept certification. It is further ORDERED that the parties bear equally any fees and costs that may be imposed by the New York Court of Appeals.

## CERTIFICATE

The following question is hereby certified to the New York Court of Appeals pursuant to Second Circuit Local Rule 27.2 and New York Compilation of Codes, Rules, and Regulations, title 22, section 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit:

> Under New York Judiciary Law § 470, which mandates that a nonresident attorney maintain an "office for the transaction of law business" within the state of New York, what are the minimum requirements necessary to satisfy that mandate?